ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| COMISIÓN DE LOS PUERTOS DE MAYAGÜEZ<br><br>Recurrida<br><br>V.<br><br>JOSÉ GONZÁLEZ FREYRE Y OTROS<br><br>Peticionarios | TA2026CE00333 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2019CV01985<br><br>Sobre: Acción rescisoria, fraude de acreedores, indemnización por el adquirente de mala fe, nulidad de reducción de capital, responsabilidad de directores de la corporación |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero

Marrero Guerrero, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 16 de abril de 2026.

La señora Sarimila Méndez, los señores José González Freyre, Frank Haacke, Alberto Fernández, Eduardo Fernández González, Trofima Corporation, Inversiones Potosí, Inc. y otros (en conjunto, peticionarios) nos solicitan la revisión de una *Resolución* con fecha de 12 de enero de 2026, mediante la cual el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI) denegó su solicitud de sentencia sumaria para desestimar la *Demanda* instada por la Comisión de los Puertos de Mayagüez (Comisión o recurrida).[1]

Por los fundamentos que se exponen a continuación, denegamos la expedición del auto de *certiorari*.

## I.

Este caso se originó el 17 de abril de 2019, cuando la Comisión presentó una *Demanda* contra los peticionarios.[2] En esta, alegó que seleccionó a *Holland Group Port Investment* (HGPI) para la operación,

---

[1] Entrada Núm. 247 del caso BY2019CV01985 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Notificada el 13 de enero de 2026.
[2] Enmendada posteriormente. *Íd.*, Véase entradas Núm. 1, 123 y 126 en SUMAC.

la administración y el desarrollo de los puertos de Mayagüez. Indicó que el señor González Freyre fungía como accionista, presidente y director de dicha corporación, mientras que la señora Méndez y los señores Haacke, Fernández, Fernández González se desempeñaban como directores de la entidad. Sostuvo que estos autorizaron la emisión de ochocientas (800) acciones preferidas por $4,000,000.00 adquiridas por el señor González Freyre, sujetas a restricciones de uso, y la suscripción de un *Lease and Development Agreement* (LDA).

La recurrida aseveró que HGPI incumplió con la presentación de informes y del plan de seguridad, el pago del canon de arrendamiento y el mantenimiento portuario, lo que ocasionó deudas, penalidades, daños y su eventual desahucio. Además, arguyó que HGPI transfirió $4,000,000.00 a Inversiones Potosí y Trofima sin notificación, lo que redujo su capital, provocó su insolvencia y afectó a sus acreedores. Añadió que HGPI se acogió a la quiebra y reportó activos que resultaron insuficientes para satisfacer su acreencia. Ante ello, solicitó declarar rescindible o nula la redención de las acciones por fraude de acreedores, el pago de las deudas y la imposición de responsabilidad solidaria a los peticionarios.

Tras varios trámites procesales, el 21 de octubre de 2025, los peticionarios solicitaron, mediante su solicitud de sentencia sumaria, la desestimación de la *Demanda*.[3] Esencialmente, adujeron que HGPI, entidad respecto a la cual se alegó fraude de acreedores, no era parte en el pleito. Alegaron que la redención de las acciones preferidas fue legítima, no causó insolvencia a HGPI, concepto que entendieron distinto a la dificultad para pagar deudas. A su vez, plantearon que los fondos provenientes de la redención estaban contractualmente limitados a gastos de capital, no a la partida reclamada que constituían gastos operacionales. Precisaron que no infringieron

---

[3] *Íd.*, Entrada Núm. 228 en SUMAC.

ningún deber legal o contractual. Además, apuntaron que la recurrida carecía de legitimación activa para reclamar por las reparaciones portuarias por haber sido estas sufragadas por el Municipio de Mayagüez y, que no eran responsables por los acuerdos alcanzados por dichas partes.

Eventualmente, el 1 de diciembre de 2025, la Comisión se opuso a la solicitud de sentencia sumaria al sostener que existían controversias de hechos materiales sobre la insolvencia de HGPI, la legalidad de la redención, el uso de los fondos de dicha transacción y la responsabilidad de los peticionarios.[4] En síntesis, alegó que los directores de HGPI autorizaron la redención de las acciones preferidas en menoscabo del capital corporativo, impidiendo el cobro de las deudas, y que Trofima e Inversiones Potosí eran adquirentes de mala fe. Sostuvo que la restricción sobre los fondos no era oponible a terceros. También, planteó que tenía derecho a reclamar las reparaciones sufragadas por el Municipio de Mayagüez debido al incumplimiento contractual de HGPI.

Sometido el asunto para su consideración, el 12 de enero de 2026, el TPI emitió la *Resolución* recurrida,[5] en la que denegó la solicitud de sentencia sumaria al concluir que existían controversias genuinas de hechos materiales que impedían resolver el caso sin la celebración de un juicio en sus méritos, siendo estos:

> 1. Si Holland y la Comisión suscribieron o llegaron a algún acuerdo, mediante el cual se limitó el uso de ciertos fondos, llamados por los demandados fondos de capital, los cuales ahora la Comisión no puede solicitar como pago por rentas debidas.
> 2. Si la redención de las acciones preferentes del señor González por parte de Holland y sus directores constituye un fraude o acción ilegal.

El foro recurrido determinó que subsistían controversias sustanciales sobre la legalidad de la redención de acciones, el uso de los fondos de capital, así como el alcance y la intención de las

---

[4] *Íd.*, Entrada Núm. 243 en SUMAC.
[5] *Íd.*, Entrada Núm. 247 en SUMAC. Notificada el 13 de enero de 2026.

disposiciones contractuales en el LDA y la resolución corporativa incorporada a este. Asimismo, estableció que del expediente surgían inferencias razonables que sostenían las reclamaciones por fraude de acreedores y violaciones estatutarias en esa etapa procesal.

Inconformes, el 27 de enero de 2026, los peticionarios solicitaron una reconsideración, la cual el foro primario denegó mediante un dictamen emitido y notificado el 13 de febrero de 2026.[6]

El 18 de marzo de 2026, los peticionarios presentaron este recurso, en el que plantearon que el TPI cometió los siguientes errores:

1. ERRÓ EL TPI AL NO DICTAR SENTENCIA SUMARIA DESESTIMANDO LA DEMANDA CUANDO LA DEMANDANTE NO CUENTA CON PRUEBA PARA CONTROVERTIR LOS HECHOS MATERIALES SOMETIDOS POR LA MOCIÓN DE SENTENCIA SUMARIA DE LOS DEMANDADOS Y POR EL DERECHO REQUERIR TAL DESESTIMACIÓN.
2. ERRÓ EL TPI AL NO DESESTIMAR LA DEMANDA CUANDO EL CONTRATO DE ARRENDAMIENTO INVOCADO EN ESTE PLEITO DISPONE CLARAMENTE QUE LOS FONDOS PRODUCTO DE LAS ACCIONES PREFERIDAS REDIMIDAS SOLAMENTE PODÍAN USARSE PARA GASTOS DE CAPITAL Y QUE LAS PARTIDAS RECLAMADAS EN LA DEMANDA NO SON GASTOS DE CAPITAL.
3. ERRÓ EL TPI AL NO RESOLVER SUMARIAMENTE QUE LAS REPARACIONES DE LAS FACILIDADES DEL PUERTO QUE LA DEMANDANTE PRETENDE COBRAR FUERON SUFRAGADAS POR EL MUNICIPIO DE MAYAGÜEZ PARA LO CUAL SE LE CEDIERON LOS INGRESOS DEL PUERTO Y, POR TANTO, LA DEMANDANTE NO SUFRIÓ MENOSCABO ALGUNO POR TALES REPARACIONES.

En esencia, los peticionarios señalaron que la *Demanda* debía desestimarse como cuestión de derecho. Argumentaron que la Comisión carecía de prueba para controvertir los hechos materiales, particularmente que los fondos provenientes de la redención de las acciones preferidas estaban contractualmente limitados a gastos de capital y que las partidas reclamadas constituían gastos operacionales. Reiteraron que la redención de las acciones no causó insolvencia a HGPI ni fraude de acreedores y que no incurrieron en

---

[6] *Íd.*, Entradas Núm. 248, 249, 250, 251 y 252 en SUMAC.

violaciones estatutarias ni contractuales. Igualmente, arguyeron que el TPI erró al no resolver que las reparaciones portuarias fueron sufragadas por el Municipio de Mayagüez, por lo que la Comisión no sufrió daño ni tenía legitimación activa para reclamarlas.

Por su parte, el 30 de marzo de 2026, la Comisión se opuso a la expedición del auto de *certiorari* al sostener que el TPI actuó correctamente al denegar la sentencia sumaria por subsistir controversias materiales sobre la existencia de un acuerdo que limitara el uso de los fondos y sobre la legalidad de la redención de las acciones preferidas. Entre otros asuntos, manifestó que sufrió daños, ya que el incumplimiento de HGPI la obligó a ceder ingresos al Municipio de Mayagüez para realizar reparaciones, por lo que dejó de percibir ingresos por la operación de los puertos, asunto que requería adjudicarse en sus méritos.

## II.

### A. *Certiorari*

El *certiorari* es un vehículo procesal extraordinario que permite que un tribunal de mayor jerarquía revise decisiones de un foro inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *McNeill Healthcare LLC v. Municipio de Las Piedras,* 206 DPR 391, 404 (2021); *Medina Nazario v. McNeill Healthcare LLC,* 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012). La expedición del auto es discrecional, por tratarse ordinariamente de asuntos interlocutorios. *Íd.*

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita taxativamente las instancias en que procede expedir el auto de *certiorari* en asuntos interlocutorios civiles. *McNeill Healthcare LLC v. Municipio de Las Piedras, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation, et al.,* 202 DPR 478 (2019). Así, procede la revisión de resoluciones u órdenes bajo las Reglas 56 y 57 de Procedimiento Civil, *supra,* o la denegación de mociones dispositivas. Como excepción, se

pueden revisar asuntos sobre la admisibilidad de testigos de hechos o peritos esenciales, privilegios evidenciarios, rebeldía, relaciones de familia, interés público u otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.* Si el asunto interlocutorio no se encuentra dentro de estas instancias, el Tribunal carece de autoridad para intervenir.

Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), R. 40, dispone los criterios que orientan el ejercicio de nuestra facultad discrecional para atender una petición de *certiorari*, al considerar:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cuando se deniega la expedición del auto de *certiorari*, no es necesario exponer las razones de dicha determinación. *IG Builders et al. v. BBVAPR, supra*, pág. 336. En tal caso, este Tribunal no asume jurisdicción sobre el asunto ni lo resuelve en sus méritos. *McNeill Healthcare LLC v. Municipio de Las Piedras, supra*, pág. 405.

**III.**

Tras una apreciación sosegada de la totalidad del expediente en atención a la normativa jurídica aplicable a las controversias, este

foro apelativo declina expedir el auto de *certiorari* e intervenir en los méritos del caso.

Los peticionarios no lograron demostrar que el TPI incurriera en error de derecho, abuso de discreción o que concurriera algún criterio de la Regla 40 del Reglamento de este Tribunal, *supra*, R. 40, o instancia dispuesta en la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, que justificara la intervención apelativa en esta etapa interlocutoria.

El TPI no erró al concluir que el mecanismo de sentencia sumaria no era el más propicio para adjudicar las controversias planteadas en este caso. Ello, particularmente cuando subsisten controversias genuinas de hechos materiales sobre asuntos medulares del caso, incluyendo el alcance y la intención de las disposiciones del LDA y de la resolución corporativa, la legalidad de la redención de las acciones preferidas y el uso de los fondos provenientes de dicha transacción, las cuales requieren la celebración de un juicio plenario para su dilucidación.

**IV.**

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari*.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones